## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BETTY FLIPPIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 11-1119-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's consideration of the treating source opinion of Dr. Hachinsky, the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.      Background

Plaintiff applied for both DIB and SSI on October 2, 2006,[1] alleging disability beginning June 13, 2005.  (R. 11, 170-80).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 11, 81-84, 103).[2]  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Debra Bice on November 30, 2009.  (R. 11, 29).  At the hearing, testimony was taken from Plaintiff and from a vocational expert (VE).  (R. 11, 29-75).  The ALJ issued her decision on March 6, 2010 finding that although Plaintiff is unable to perform her past relevant work, there are a significant number of jobs in the economy that Plaintiff can perform.  (R. 11-20).  Consequently, she determined that Plaintiff is not disabled within the meaning of the Act, and denied Plaintiff's applications.  (R. 20-21).  Plaintiff sought Appeals Council review of the ALJ's decision, and her representative submitted a brief for the Council's consideration.  (R. 7, 318-19).  The

---

[1]The ALJ stated Plaintiff filed her applications on October 2, 2006 (R. 11), but the applications on file are dated October 3, 2006 (R. 170-190), and both Plaintiff and the Commissioner assert that Plaintiff applied for benefits on October 3, 2006.  (Pl. Br. 2); (Comm'r Br. 2).  However, neither party alleges error in the ALJ's finding, and the court will not attempt to decide the issue.  The Commissioner may address this issue, if necessary, on remand.

[2]The decision states only that the claims were denied initially.  (R. 11).  But, judicial review generally requires administrative exhaustion, Matthews v. Eldridge, 424 U.S. 319, 330-31 (1976); the regulations generally require reconsideration before a claimant may request an ALJ hearing, 20 C.F.R. §§ 404.907, 404.915, 416.1407, 416.1415; the record reflects that the claims were reconsidered and denied at the reconsideration level (R. 83-84); and both parties assert that the applications were denied initially and on reconsideration.  (Pl. Br. 2); (Comm'r Br. 2).  The court finds that Plaintiff's applications were denied initially and on reconsideration before Plaintiff requested an ALJ hearing.

Council received the representative's brief, and issued an Order making it a part of the administrative record.  (R. 5) (Order of Appeals Council).[3]  The Council considered the brief, found that it did not provide a basis to change the ALJ's decision, and found no reason under its rules to review the decision.  (R. 1-2).  Therefore, the Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and

---

[3]The "Order of the Appeals Council" designated the Representative Brief as Exhibit 22E in the administrative record, and suggests that the brief consists of 31 pages. (R. 5) ("Representative Brief (31 Pages)").  However, in the administrative record before the court, Exhibit 22E is only two pages.  (Doc. 9, attach. 7 (R. 318-19)).  Plaintiff does not allege error in these facts, and the Commissioner does not provide an explanation. Therefore, the court will not consider the issue.

3

whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her

age, education, and work experience, engage in any other substantial gainful work

existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir.

2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e),

416.920(e).  This assessment is used at both step four and step five of the sequential

evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining whether claimant can perform past relevant work; and whether, considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084).  In

steps one through four the burden is on claimant to prove a disability that prevents

performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter,

245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy within

Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff presents three claims of error.  She claims the ALJ erred in her step two

evaluation of the severity of Plaintiff's mental impairments, in assessing Plaintiff's RFC,

and in evaluating the credibility of Plaintiff's allegation of symptoms.  (Pl. Br. 7-16).

However, in Plaintiff's argument regarding error in the RFC assessment, the court

discerns four distinct claims:  (1) The ALJ did not link each RFC finding to specific

evidence in the record; (2) the ALJ did not properly evaluate the treating source opinion

of Dr. Hachinsky; (3) the ALJ did not perform a function-by-function assessment of

Plaintiff's physical and mental capacities before expressing RFC in terms of the

exertional category, "sedentary;" and (4) the ALJ failed to properly account for Plaintiff's

mental and manipulative limitations in making her RFC assessment.  The Commissioner's

brief responded to each error alleged by Plaintiff.  He argued that the ALJ applied the

correct legal standard and properly evaluated each determination at issue, and that

substantial evidence in the record supports the decision.  (Comm'r Br. 4-18).  In her reply

brief, Plaintiff merely reiterated the arguments in her brief.  (Reply 2-3).

The court finds that the ALJ erred in her consideration of Dr. Hachinsky's opinion,

and that this error requires remand for a proper evaluation.  Although the court discerns

six allegations of error in Plaintiff's brief, it finds an error requiring remand, and will not

address the other five issues to any substantial degree.  If desired, Plaintiff may make her

arguments regarding those alleged errors to the Commissioner on remand.

## III.   Consideration of the Treating Source Opinion

Plaintiff notes that Dr. Hachinsky found Plaintiff markedly limited in three of

twenty mental functional abilities, and moderately limited in fourteen of those mental

functional abilities.  (Pl. Br. 10) (citing (R. 974-75)).  She recognizes that the ALJ

purportedly gave "greater weight" to the opinion of Dr. Hachinsky to the extent of three

limitations, but she argues that the ALJ did not explain why she rejected the remainder of

Dr. Hachinsky's opinion.  Plaintiff points out that the ALJ interrupted counsel's

examination of the vocational expert regarding Dr. Hachinsky's opinion, and that counsel

thereafter suggested that a "moderate limitation" would indicate the mental ability at issue

would be precluded for one-third of the workday.  (Pl. Br. 11) (citing (R. 72)).  She points

out that in the decision the ALJ specifically declined to interpret Dr. Hachinsky's opinion

regarding "moderate limitation" to preclude the activities for one-third of the workday,

but found that Dr. Hachinsky's opinion limited "performance as contemplated in the

above found residual function capacity" assessed by the ALJ.  Id. (quoting (R. 18)).

Plaintiff argues that the ALJ should have recontacted Dr. Hachinsky for clarification of

the severity intended when assigning moderate or marked limitations--rather than to

attempt an arbitrary resolution.  (Pl. Br. 11).  Finally, Plaintiff argues that the ALJ

"seemingly ignore[d] the marked limitations" assessed by Dr. Hachinsky, and "gave no

reason or explanation for rejecting these limitations."  Id.

The Commissioner argues that the ALJ properly considered Dr. Hachinsky's opinion. (Comm'r Br. 14-15). He notes that Plaintiff interpreted "moderate limitation" to preclude the mental ability for one-third of the day, and "marked limitation" to preclude the ability for two-thirds of the day, but points out that the ALJ found the record did not support such an interpretation. Id. at 15. He points to the definitions of "moderate" and "marked" on Dr. Hachinsky's forms, to Plaintiff's employment activity, to Plaintiff's "normal" mental status examinations, and to the ALJ's determination that Dr. Hachinsky's opinion allows Plaintiff to work with limited interaction with other people and the public and with changes in the workplace, and argues that "the ALJ accounted for Dr. Hachinsky's restrictions by limiting Plaintiff to work involving only occasional contact with coworkers, occasional changes in the job process, and no contact with the public." Id. (citing (R. 15, 18, 413-25, 429, 775-77, 974)).

A.     The ALJ's Findings

The ALJ noted that Plaintiff first saw Dr. Hachinsky, an osteopathic physician, for a psychiatric evaluation in January, 2005, and that Plaintiff reported depression, PTSD (post-traumatic stress disorder), and anxiety, and occasional marijuana and alcohol use. (R. 17). She noted that Dr. Hachinsky diagnosed Plaintiff with major depressive disorder, recurrent, and PTSD, and assessed a GAF (global assessment of functioning) score of 60. Id. She recognized that Dr. Hachinsky saw Plaintiff "every month or so" thereafter, and stated that Dr. Hachinsky's office "notes reflect treatment was working well." Id. (citing Exs. 5F, 6F (R. 49-29)).

The ALJ discussed her evaluation of the opinion evidence on page 8 of her decision.  (R. 18).  She gave "no weight" to the September 29, 2006 opinion of a treating physician, Dr. Wheeler, which suggested that Plaintiff had been temporarily disabled since a June 13, 2005 car wreck.  Id. (citing Ex. 21F (R. 615-704)).  She summarized the opinion of Dr. Wallingford, a consultant psychologist, and noted the psychologist's finding that at times Plaintiff "lost her focus but she was capable of returning to the original thought with redirection."  Id. (citing Ex. 13F (R. 546-51)).  Finally, she addressed the opinions of Plaintiff's social worker therapist and of Dr. Hachinsky:

> The extreme mental limitations provided in Medical Source Statements proffered by the social worker who worked with the claimant are not consistent with the mental status examinations and accompanying notations that show the claimant's memory and concentration were within normal limits.  Records reflect a GAF of 60 in January 2005 (Exhibits 5F, 6F, 30F, 31F, 35F) [(R. 409-29, 770-78, 970-72)].  I note that a social worker is not an "acceptable medical source" as she is not a licensed physician or licensed psychologist (20 CFR 404.1513(a)).  A social worker is an "other source," 20 CFR 404.1513(d).  However, I have considered such opinions in light of SSR 06-3p.  I accord greater weight to the opinion of Dr. Hachinsky to the extent that he provided the claimant was able to work with limited interaction with other people, the general public, and changes in the workplace (Exhibit 36F) [(R. 973-75)].
>
> * * *
>
> I have considered Dr. Hachinsky's opinion, but do not interpret it as precluding tasks one-third of the time, but limiting performance as contemplated in the above found residual functional capacity.

(R. 18).

## B.    Analysis

As this quotation reveals, the ALJ considered, but rejected, the "extreme mental limitations" opined by Plaintiff's social worker therapist.  Moreover, as the decision suggests, the ALJ properly characterized the social worker's opinion as containing "extreme mental limitations."

The blank "Medical Source Statement - Mental" forms completed by Plaintiff's social worker and by Dr. Hachinsky were identical in every respect, including the twenty mental abilities rated by the medical source, the four potential degrees of limitation in each ability, and the definition assigned to each degree of limitation.  Compare, (R. 971-72) with (R. 974-75).  The social worker opined that Plaintiff is "Extremely Limited" ("Impairment level preclude[s] useful functioning in this category") in five of the twenty mental abilities, "Markedly Limited" ("More than Moderate, but less than extreme resulting in limitations that seriously interferes [sic] with the ability to function independently") in ten of the twenty mental abilities, "Moderately Limited" ("Impairment levels are compatible with some, but not all, useful functioning") in five of the twenty mental abilities, and "Not Significantly Limited" in three of the twenty mental abilities. (R. 971-72).  The social worker's opinions total twenty-three with respect to the twenty mental abilities.  In part, this is because the social worker found two mental abilities were contained within one ability presented on the form (No. 16) and found therein that Plaintiff is markedly limited in the ability to maintain socially appropriate behavior, but not significantly limited in the ability to adhere to basic standards of neatness and cleanliness.  (R. 972).  The social worker also opined that Plaintiff is both extremely

10

limited and markedly limited with respect to two of the twenty mental abilities: "(15) The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "(20) The ability to set realistic goals or make plans independently of others." Id.

Dr. Hachinsky's opinion, on the other hand, did not find Plaintiff "extremely limited" in any mental ability. Dr. Hachinsky found Plaintiff "markedly limited" in three mental abilities, "moderately limited" in fourteen mental abilities, and "not significantly limited" in only three mental abilities. (R. 974-75). After rejecting the social worker's opinion, the ALJ stated that she accorded greater weight to Dr. Hachinsky's opinion. However, the ALJ limited that weight "to the extent [Dr. Hachinsky] provided the claimant was able to work with limited interaction with other people, the general public and changes in the workplace." (R. 18) (citing Ex. 36F (R. 973-75) (Dr. Hachinsky's Medical Source Statement)). Moreover, the ALJ found that Plaintiff was restricted to occasional contact with co-workers, no contact with the public during the performance of her job, and occasional changes in job processes. (R. 15). The court finds that the three abilities restricted by the ALJ (limited ability to interact with other people or the general public, and limited ability to work with changes in the workplace), relate directly to the three mental activities Dr. Hachinsky determined were "markedly limited:" "9. The ability to work in coordination with or proximity to others without being distracted by them;" "12. The ability to interact appropriately with the general public;" and "17. The ability to respond appropriately to changes in the work setting." (R. 974-75).

11

In context then, the ALJ credited Dr. Hachinsky's opinions regarding marked limitations but only to the extent those limitations would preclude contact with the general public, but would allow occasional contact with co-workers, and would allow occasional changes in job processes.  However, Dr. Hachinsky opined that Plaintiff's ability in those three areas are "markedly limited"--that they produce "limitations that seriously interferes with the ability to function independently."  (R. 974).  The ALJ purported to give "greater weight" to these opinions, but she did not explain how she found that such limitations (that seriously interfere with the ability to function independently) would preclude all contact with the general public but would permit occasional contact with co-workers.  Nor did she explain how she determined that a serious interference with the ability to respond appropriately to changes in the work setting would nonetheless allow Plaintiff to adapt to occasional changes in job processes.  These ambiguities need to be resolved.

With regard to the fourteen mental abilities Dr. Hachinsky found "moderately limited" by Plaintiff's mental impairments, it is not clear how the ALJ accounted for them.  She did not specifically reject them, but her statement that she gave Dr. Hachinsky's opinion "greater weight" did not discuss any of the "moderately limited" abilities and implies that the moderate limitations were accepted.  In the next paragraph, the ALJ stated that she did not interpret Dr. Hachinsky's opinion "as precluding tasks one-third of the time," but as being consistent with the RFC assessed.  (R. 18).  Although the ALJ does not specifically say, it appears this finding is in response to Plaintiff's

counsel's suggestion at the hearing that a moderate limitation would preclude that ability for one-third of a day.  (R. 72-73).  It is clear that the ALJ found Dr. Hachinsky did not find Plaintiff limited for one-third of a day, but she did not state how she interpreted Dr. Hachinsky's moderate limitations.  She merely stated that she found they limited performance as contemplated in the RFC she had assessed.  (R. 18).  As discussed above, the RFC assessed by the ALJ had only three mental limitations--occasional contact with co-workers, occasional changes in job processes, and no contact with the general public. (R. 15).  Moreover, as also discussed above, these three mental limitations relate to the abilities that Dr. Hachinsky found markedly limited.  Thus, the essence of the ALJ's finding regarding the fourteen moderate limitations assessed by Dr. Hachinsky was that all of the limitations combined were not sufficient to increase the severity of the limitations imposed by the three marked limitations, and all of the moderate limitations combined were not sufficient to cause any additional mental limitation.  Yet, the ALJ provided no explanation of the rationale she applied to reach this conclusion, except to state that it was consistent with the RFC assessed.

The court's concern is heightened because of the ALJ's decision at the hearing not to allow the vocational expert (VE) to testify regarding the effect of the fourteen abilities Dr. Hachinsky found to be moderately limited.  Plaintiff's counsel asked the VE to testify regarding the limitations expressed in Dr. Hachinsky's opinion, and she began to do so:

> A       Right.  She had several moderately limited areas and then three in the markedly limited, that being number nine, the ability to work in coordination or proximity with others without being distracted by

13

them.  The ability to interact appropriately with the general public.
The ability to respond appropriately to changes in work setting.  In
terms of the marketed [sic] restrictions with the particular jobs we
looked at, because we're not working with the public and it's a
simple, repetitive unskilled job, it really takes care of those in the
markedly restricted areas.  However, due to the <u>number</u> of
moderately limited areas --

ALJ:   Now, before you go any further, how -- are you using the definition
of he?. [sic]  And when I read that it says impairment levels are
compatible with some, but not all-useful functioning.

A     Correct.

ALJ:   I mean I have a problem, because I don't know what you're
interpreting that as.

A     Right.

(R. 72) (emphasis added).  The ALJ then instructed Plaintiff's counsel to "ask a question

that documents or proposes" the degree of limitation presented in Dr. Hachinsky's

opinion.  <u>Id.</u>  It was in this context that counsel defined moderately limited as "the ability

to perform that function would be precluded for one-third of the day and then markedly

limited it would be up to two-thirds of the day," and asked if, given these limitations,

Plaintiff would be able to perform any work.  (R. 72-73).  The VE replied:

No.  It's again, the markedly is really dealt within the we already eliminate
public contact anyway, so I mean that's not going to be a problem in terms
of the markedly restricted areas.  But for the moderately limited <u>because of</u>
<u>the number of areas that are marked</u>, specifically in the simple and unskilled
so that your complex things are not a problem, but the ability to work or to
maintain attention and concentration for extended period, if you can't do
that for a third of the day, you're not going to be able to maintain your
production and quality of work.  The ability to perform within a schedule,
maintain regular attendance and punctuality, again you're not going to be
able to maintain work.  The ability to sustain ordinary routine without

14

> special supervision, again you won't be able to maintain work.  The ability
> to make simple work related decisions.  The ability to complete a normal
> work day and work week without psychologically based symptoms that are
> going to interrupt it, again <u>all of these areas are going to piggy back on top
> of each other</u> and they're not going to be able to maintain work.

(R. 73) (emphases added).  The VE specifically noted that an inability to maintain

attention and concentration for one-third of a day would preclude work, but her primary

focus in finding that no work could be performed in the scenario presented by counsel

seems to be the sheer number of areas impacted ("because of the number of areas that are

marked") and the fact that "all of these areas are going to piggy back on top of each

other."  <u>Id.</u>  Moreover, the answer the VE was giving <u>before</u> she was stopped by the ALJ

suggests that she was similarly concerned that the number of moderate limitations

assessed would negatively impact the ability to work even without "markedly limited"

being defined to preclude the ability for one-third of the workday.  (R. 72) (There are

three markedly limited areas but "several moderately limited areas," and the markedly

limited areas were accounted for in the jobs suggested, "However, due to the number of

moderately limited areas--").

The circumstances here suggest the ALJ was concerned that the VE was unable to

discern the degree of severity of the "Moderately Limited" areas merely by reviewing Dr.

Hachinsky's opinion, and she did not want the VE to speculate regarding the physician's

meaning.  Thus, she required counsel to propose a definition for "Moderately Limited,"

and counsel did so.  Based upon that definition, the VE testified that no work would be

available to such an individual because the sheer number of "moderately limited" areas

would piggy back on top of each other.  (R. 73).  The ALJ determined that "Moderately Limited" as used by Dr. Hachinsky does not mean "precluding tasks one-third of the time" as suggested by counsel, but she did not make a finding regarding what Dr. Hachinsky meant by the term.

Moreover, and perhaps more importantly, the ALJ did not seek the VE's testimony regarding the limitations imposed by Dr. Hachinsky based upon the "proper" meaning of the term as used by Dr. Hachinsky and found by the ALJ.  The ALJ accorded "greater weight" to Dr. Hachinsky's opinion, but she gave no explanation regarding the meaning of the fourteen moderate limitations assessed by Dr. Hachinsky, and there is no record evidence (beyond the forms completed by Dr. Hachinsky) suggesting what Dr. Hachinsky actually meant by the fourteen moderate limitations assessed.  Further, the VE's testimony suggests that she believed the fourteen limitations preclude all work even if the individual limitations do not prevent performance in each area for one-third of a workday. Yet, the ALJ did not address or attempt to clarify the ambiguity presented by this testimony, except to imply that the VE could not understand Dr. Hachinsky's meaning merely by reviewing the form.  Finally, the meaning of the term "moderately limited" as used by Dr. Hachinsky, although not transparent, is not so opaque as suggested by the ALJ, and a close approximation might be apparent to an individual such as the VE merely by considering the definitions presented in the form itself.

As suggested <u>supra</u> at 10-11, the form used by Dr. Hachinsky provides four potential degrees of limitation in each of twenty mental abilities, and defines each degree

of limitation.  (R. 974-75).  The form defines "Extremely Limited:"  "Impairment level

preclude[s] useful functioning in this category; " "Markedly Limited:"  "More than

Moderate, but less than extreme resulting in limitations that seriously interferes [sic] with

the ability to function independently;" "Moderately Limited:"  "Impairment levels are

compatible with some, but not all, useful functioning;" and provides "Not Significantly

Limited" as the least restrictive limitation in the twenty mental abilities considered.  (R.

974).  Therefore, considering the limitations provided, it becomes apparent that

"moderately limited," as used by Dr. Hachinsky is at least a <u>significant</u> limitation

<u>reducing</u> useful functioning in the mental ability at issue, although it does not <u>seriously</u>

<u>interfere</u> with independent functioning in that mental ability.  Although this is an

imprecise definition in the realm of mental health and mental abilities (which seems to be

marked by imprecision) neither the ALJ at the hearing or in the decision, nor the

Commissioner in his briefing before this court suggests why the definition given is so

insufficient as to preclude the VE from evaluating Dr. Hachinsky's opinion and offering

her expert opinion as to the effect of such limitations on the range of work which would

be available to a hypothetical individual with such limitations.  In fact, in his brief the

Commissioner cites the definitions from Dr. Hachinsky's medical source statement, and

seems to argue that they support the ALJ's determination that the terms do not mean what

counsel suggested, but he ignores the fact that the ALJ refused to allow the VE to express

an opinion based merely upon a review of Dr. Hachinsky's medical source statement

which included the definitions at issue.

Finally, imprecise definitions of moderate or marked degrees of limitation are prevalent throughout the Social Security Administration's procedures and processes for evaluating mental impairments.  The Commissioner promulgated a psychiatric review technique for evaluating the severity of mental impairments in adults, and requires that the technique be used at step two and step three of the sequential evaluation process to determine whether a mental impairment is severe, and to determine whether an impairment meets of medically equals a Listed impairment.  20 C.F.R. §§ 404.1520a, 416.920a.  The technique identifies four broad areas of mental functioning, and provides scales to rate the degree of limitation in each functional area.  Id. at §§ 404.1520a(c), 416.920a(c).  With regard to the first three functional areas, the technique provides that the degree of limitation in each area will be rated using a five-point scale:  none, mild, moderate, or extreme; and provides no definition of the terms except to state, "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."  Id. at §§ 404.1520a(c)(4), 416.920a(c)(4).  In the Listing of Impairments for mental disorders, the Commissioner explains that in determining whether a mental impairment meets or medically equals the severity of a Listed impairment, the four broad mental functional areas are evaluated, and "[w]hen [the Commissioner uses] 'marked' as a standard for measuring the degree of limitation, it means more than moderate, but less than extreme."  Id. Pt. 404, Subpt. P, App. 1 § 12.00C.

The court is aware of the difference between evaluating the severity of mental limitations at steps two and three based upon the four broad functional areas identified in

the psychiatric review technique and assessing mental RFC for use at steps four and five.

SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2011).  "The mental

RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more

detailed assessment by itemizing various functions contained in the broad categories

found in" the four functional areas.  Id.  RFC must be expressed in terms of specific

work-related functions.  Id. at 148.  "Work-related mental activities generally required by

competitive, remunerative work include the abilities to:  understand, carry out, and

remember instructions; use judgment in making work-related decisions; respond

appropriately to supervision, co-workers and work situations; and deal with changes in a

routine work setting."  Id. at 149.  The work-related mental activities identified in SSR

96-8p are included within the twenty mental abilities identified in Dr. Hachinsky's

medical source statement.  Other SSA regulations also identify similar and additional

work-related mental activities.  20 C.F.R. §§ 404.1521, 404.1545(c), 416.921, 416.945(c).

An ALJ should not state a mental RFC in terms of the four functional areas identified in

the psychiatric review technique, but should make a function-by-function assessment of

each of the work-related mental activities relevant to the case at hand.

The court also takes judicial notice that the Commissioner's "Mental Residual

Functional Capacity Assessment" form (SSA-4734-F4-SUP) contains twenty mental

abilities almost identical to the twenty mental abilities assessed on Dr. Hachinsky's

medical source statement.  Soc. Sec. Admin. Program Operations Manual Sys. DI

24510.060 et seq.  This is a representative, but likely not exhaustive, list of the work-

related mental activities which an ALJ should consider in assessing the severity of mental impairments.  On the SSA form, only three degrees of limitation are provided ("not significantly limited," "moderately limited," and "markedly limited"), and none of the terms are defined.  Id. at DI 24510.090.

The ALJ relied upon the imprecision in Dr. Hachinsky's opinion to discount the majority of the opinion while professing to accord "greater weight" to the opinion. Moreover, she relied upon the same imprecision to preclude the VE from expressing her personal evaluation based upon Dr. Hachinsky's opinion.  Finally, she ignored the concern the VE expressed regarding the sheer number of limitations assessed by Dr. Hachinsky, and did not explain how she determined that the fourteen moderate limitations assessed by Dr. Hachinsky were not sufficient in combination to increase the severity of the limitations imposed by the three marked limitations, and were not sufficient to cause any additional mental limitation, except to state that all of Dr. Hachinsky's limitations were (somehow) accounted for in the RFC she had assessed.  This simply leaves the court wondering how the limitations were weighed, and produces a result in which it cannot be determined whether substantial evidence supports the ALJ's decision without weighing Dr. Hachinsky's opinion itself.  Remand is necessary for the ALJ to properly consider Dr. Hachinsky's medical opinion, and explain how substantial record evidence supports the determination.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is

REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42

U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 29th day of March 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum

**John W. Lungstrum**
**United States District Judge**